[Cite as *State ex rel. Clift v. School Emps. Retirement Sys.*, 2019-Ohio-1896.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cheryl Clift, | : | |
| Relator, | : | |
| v. | : | No. 17AP-561 |
| School Employees Retirement System of Ohio Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on May 16, 2019

**On brief:** *Green Haines Sgambati Co., L.P.A.,* and *Stanley J. Okusewsky, III*, for relator.

**On brief:** *Dave Yost*, Attorney General, *John J. Danish* and *Mary Therese J. Bridge*, for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1}  Relator, Cheryl Clift, initiated this original action seeking a writ of mandamus ordering respondent, School Employees Retirement System of Ohio Board ("SERS" or "board") to accept her application for disability benefits.  Clift also requests an alternative writ directing SERS to show cause by a date certain as to why it has failed to accept her application.

{¶ 2}  This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate determined that SERS does not have a clear legal obligation to allow Clift to file a disability

benefit application made more than two years after her last date of contributing service, and Clift does not have a clear legal right to file the application at that time. Thus, the magistrate recommends this court deny Clift's request for a writ of mandamus. Clift has filed objections to the magistrate's decision, challenging the conclusions reached by the magistrate regarding both SERS's duty to accept her application and her right to file that application. Clift's objections lack merit.

{¶ 3} The underlying facts are undisputed. In May 2012, Clift was injured during her employment as a school bus driver for Noble local schools. By November 30, 2012, she had used all of her available sick and other types of leave. Clift filed claims with the Ohio Bureau of Workers' Compensation due to the injury, and the claims were approved in December 2012. In May 2015, Clift began to pursue SERS disability benefits as a SERS member, and she also requested SERS service credit for the time she had received workers' compensation benefits. SERS granted her service credit for the period covered by her workers' compensation benefits; however, SERS informed Clift that she could not apply for SERS disability benefits because the application had to have been received within two years of the date of her last day of contributing service, November 30, 2012. Clift disputed SERS's reading of the pertinent statutes, but SERS ultimately issued a final decision denying the disability benefits request as being untimely. This mandamus action followed.

{¶ 4} At issue is whether Clift's time off work while receiving workers' compensation benefits constitutes "contributing service" for the purpose of determining when she could file her application for SERS disability benefits. Under R.C. 3309.39(D), an application for SERS disability benefits "must be made within two years from the date the member's contributing service terminated." Revised Code Chapter 3309, which governs SERS, contains a definitions statute, R.C. 3309.01. While this statute does not separately define "contributing service," subsection (D) of this statute defines "[t]otal service," "total service credit," or "Ohio service credit" to mean "all contributing service of a member of the school employees retirement system, and all prior service, computed as provided in this chapter, and all service established pursuant to sections 3309.31, 3309.311,

and 3309.33 of the Revised Code." R.C. 3309.01(D).[1] "In addition, 'total service' includes any period, not in excess of three years, during which a member was out of service and receiving benefits from the state insurance fund, provided the injury or incapacitation was the direct result of school employment." R.C. 3309.01(D). Thus, pursuant to R.C. 3309.01(D), total service includes the following: contributing service; prior service; service established pursuant to R.C. 3309.31, 3309.311, and 3309.33; and any workers' compensation time. Based on this definition, total service includes all contributing service, but not all total service is contributing service.

{¶ 5} Clift concedes that not all total service is contributing service, but she disagrees with the magistrate's determination that R.C. 3309.01(D) excludes workers' compensation time from contributing service. She contends the magistrate, in reaching his conclusion, failed to consider the fact that the provision within R.C. 3309.01(D) relating to workers' compensation time is in a separate sentence from the sentence otherwise defining total service, total service credit, and Ohio service credit. She argues workers' compensation time is simply another example of total service and not a different type of service from those delineated in the first sentence of R.C. 3309.01(D). However, the fact that the statute defines a member's total service to include workers' compensation time in a separate sentence provides no support for her argument that workers' compensation time should be considered contributing service. Further, the statute's second sentence expressly provides that workers' compensation time constitutes total service "in addition" to the other types of total service identified in the statute's first sentence.

{¶ 6} Clift also argues the magistrate failed to consider that workers' compensation time is like other credited service that involves being absent from work for a period of time. In this regard, she notes SERS members' ability to obtain service credit for time involving disability leave (R.C. 3309.471), absence due to pregnancy (R.C. 3309.472), resignation due to pregnancy or adoption of child (R.C. 3309.473), and approved leave of absence (R.C.

---

[1] For the purpose of R.C. 3309.01(D), "prior service" refers to certain service rendered prior to September 1, 1937. R.C. 3309.01(C). R.C. 3309.31 authorizes a member to purchase service credit based on certain prior school or public service. Similarly, R.C. 3309.311 authorizes a member to purchase service credit based on certain service as a school or governing board member. And pursuant to R.C. 3309.33, an employer may purchase service credit for a member as part of a retirement incentive plan.

3309.474).[2]  Clift asserts that, for the purpose of R.C. 3309.01(D), credit acquired under these statutes constitutes contributing service by default because it would not be prior service under R.C. 3309.01(C), or service established under R.C. 3309.31, 3309.311, or 3309.33.  She suggests there is nothing to distinguish service acquired under R.C. 3309.471 through 3309.474 from service credited for workers' compensation time.  Thus, according to her, they all constitute contributing service.  We disagree.

{¶ 7}  There is an important distinction between service credit for workers' compensation time and time credited under R.C. 3309.471, 3309.472, 3309.473, or 3309.474:  To receive service credit under one of these four statutes, payments must be made to SERS either by the member or the member's employer, depending on the statute, but a member is entitled to service credit for workers' compensation time without payment from the member or the member's employer to SERS.  Thus, while credit for service under R.C. 3309.471, 3309.472, 3309.473, and 3309.474 involves contributions to SERS, credit for workers' compensation time has no contribution component.

{¶ 8}  As the magistrate correctly determined, R.C. 3309.01(D) can only be reasonably read to provide that while total service includes workers' compensation time, contributing service does not include workers' compensation time.  Consequently, we agree with the magistrate's conclusion that SERS properly determined that Clift's workers' compensation time, which increased her total service credit, did not affect the deadline set forth in R.C. 3309.39(D) for her to submit a SERS disability benefits application.

{¶ 9}  Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined that Clift is not entitled to the requested writ of mandamus. The magistrate properly applied the pertinent law to the salient facts. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  We therefore overrule Clift's objections to the magistrate's decision and deny her request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

SADLER and DORRIAN, JJ., concur.

---

[2] During the period of time when a public school employee is working and receiving compensation, the employee and his or her employer must make contributions to SERS based on a percentage of the employee's compensation.  R.C. 3309.47; R.C. 3309.49.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cheryl Clift, | : | |
| Relator, | : | |
| v. | : | No. 17AP-561 |
| School Employees Retirement System of Ohio Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 29, 2018

---

*Stanley J. Okusewsky, III*, for relator.

*Michael DeWine*, Attorney General, *John J. Danish* and *Mary Therese J. Bridge*, for respondent.

---

IN MANDAMUS

{¶ 10} Relator, Cheryl Clift, has filed this original action seeking a writ of mandamus ordering respondent, School Employees Retirement System of Ohio Board ("SERS" or "board") to accept relator's application for disability benefits. Relator also requests an alternative writ directing SERS to show cause by a date certain as to why it has failed to accept relator's application.

{¶ 11} The point of contention in these administrative proceedings was whether relator's time off work while receiving workers' compensation benefits could be considered "contributing service" for purposes of determining the starting date from which the two-year period for filing her application for disability benefits would run.

Findings of Fact:

{¶ 12} 1.  Relator worked as an employee of Noble Local School District Board of Education ("Noble schools") as a school bus driver.

{¶ 13} 2.  In the course of this employment, relator was an employee as defined by R.C. 3309.01(B), and a member of SERS as defined by R.C. 3309.01(E).

{¶ 14} 3.  In May 2012, relator suffered an injury in the course of her employment with Noble schools.

{¶ 15} 4.  Relator consumed all of her available sick and other types of leave by the end of November 2012.  Noble schools reported to SERS that relator's paid leave ended on November 30, 2012, and this was her final day of employment.

{¶ 16} 5.  Relator filed claims with the Ohio Bureau of Workers' Compensation arising from her employment with Noble schools, and the claims were approved in December 2012.

{¶ 17} 6.  On or about May 2015, relator requested information from SERS regarding a disability benefits application.

{¶ 18} 7.  At the same time, relator requested service credit for the period through which she had received workers' compensation benefits devolving from her approved claims.

{¶ 19} 8.  In a letter dated June 3, 2015, a SERS staff member informed relator that SERS had granted an additional 1.633 years of service credit for the months of December 2012 through June 2014 for the period covered by relator's workers' compensation benefits. This increased relator's service credit to 16.217 years.

{¶ 20} 9.  The June 3, 2015 letter also informed relator that SERS could not grant additional credit for the 2014/2015 fiscal year until the completion of that year, and invited relator to contact SERS in July 2015 to seek the additional service credit.

{¶ 21} 10.  The June 3, 2015 letter, however, indicated that relator could not apply for SERS disability benefits, because relator's last day of service in her employment was established as November 30, 2012, the date that her leave time was consumed, and applications for SERS disability benefits must be received within two years of that date of service.

{¶ 22} 11.  Counsel for relator contacted SERS on June 29, 2015 to inform SERS that relator's final day of service was August 30, 2013, when she received her last check and pay stub from Noble schools.

{¶ 23} 12.  In a letter dated July 8, 2015, SERS staff responded that the August 30, 2013 payment was a balance of contract payment that did not represent the date of the underlying paid service time, and was money paid over the summer for periods worked previously during the school year.

{¶ 24} 13.  In another letter dated March 9, 2016, counsel for relator proposed to SERS that relator's last day of service would still have been in August 2013, because that was when relator attended a re-certification class to retain her credentials as a school bus driver, and was paid a nominal amount to do so by Noble schools.

{¶ 25} 14.  The March 9, 2016 letter also asserts, in the alternative, that relator's service extended through June 2014 based on relator's receipt of payments in her approved workers' compensation claim.

{¶ 26} 15.  SERS Associate General Counsel, Susan Russell, replied in a letter dated March 28, 2016 to explain SERS's position that, pursuant to statute, "[t]he two year time limit for submitting an application for disability starts running at the last date of paid service.  (See R.C. 3309.39(D)."  Under SERS's interpretation of the statute as applied to relator's employment history with Noble schools, more than two years elapsed between relator's final day of paid service on November 30, 2012, and her disability inquiry in May 2015. Associate General Counsel Russell further explained that there was a distinction between contributing service credit and other types of service credit, and that, while relator was entitled to service credit for her workers' compensation time for purposes of computing her retirement benefits, that time did not constitute contributing service that would extend the period in which relator could file her disability application under R.C. 3309.39(D).

{¶ 27} 16. The March 28, 2016 letter from Associate General Counsel Russell further noted, with respect to the $10 payment for obtaining bus driver re-certification in August 2013, that Noble schools had been unable to confirm this payment.  SERS, for the time being, therefore took the position that Noble schools' original certification of relator's last day of paid service as November 30, 2012 remained unchanged.

{¶ 28} 17. The position expressed in the March 28, 2016 letter was confirmed by a May 4, 2016 letter indicating the final staff decision would be to deny the disability application on the basis that it was not submitted within two years of the last day of contributing service.

{¶ 29} 18. Relator appealed the May 4, 2016 final staff decision to the SERS board pursuant to Ohio Adm.Code 3309-1-03.

{¶ 30} 19. On July 26, 2016 Associate General Counsel Russell notified relator by letter that the board had upheld the staff determination.

{¶ 31} 20. Relator filed a complaint for a writ of mandamus in this court on August 9, 2017.

Discussions and Conclusions of Law:

{¶ 32} It should be noted that the following discussion concerns only the impact of relator's receipt of workers' compensation benefits. It does not address relator's alternative argument that her school bus driver certification program in August 2013, being paid, was contributing service that would further extend the time for filing her disability application. The board's staff recommendation and final decision seems to have reserved this question in the event that relator could obtain corroboration from her employer that this training occurred and was paid service. Nor has relator challenged in the present action the previous determination by SERS that her contractually deferred payments would not extend her contributing service end date.

{¶ 33} In order for a writ of mandamus to issue, relator must demonstrate that she has a clear legal right to the relief prayed for, that respondent is under a clear legal duty to perform the act requested, and that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983). Because there is no provision granting a direct appeal from a final decision of the SERS board, mandamus is available to correct an abuse of discretion by the board. *State ex rel. McMaster v. School Emps. Retirement Sys.*, 69 Ohio St.3d 130, 133 (1994). Relator therefore meets the third prong of the mandamus test above, so that relator need only prove that SERS has a clear legal duty to accept relator's application for disability benefits, and that she has a clear legal right to submit that application.

{¶ 34} SERS is a creature of statute and can only act in accordance with its enabling statutory scheme. *State ex rel. Mendez v. Pub. School Emps. Retirement Sys.*, 10th Dist. No. 88AP-458 (May 23, 1989). The statute at issue in the present case is R.C. 3309.39(D), pursuant to which a disability applicant must file the application "within two years from the date the member's contributing service terminated." SERS determined that Noble schools reported relator's last day of service as November 30, 2012, and relator did not file her application for disability benefits until May 2015, more than two years after her last day of contributing service. Relator asserts to the contrary that she received workers' compensation benefits through 2014, and this must count as contributing service for purposes of determining the cutoff date for her disability application.

{¶ 35} The parties agree that SERS statutes do not contain an express definition of the term "contributing service," but disagree on whether R.C. 3309.01(D) otherwise clearly defines "contributing service" as a limited component of "total service":

> "Total service," "total service credit," or "Ohio service credit" means *all contributing service* of a member of the school employees retirement system, and all prior service, computed as provided in this chapter, and all service established pursuant to sections 3309.31, 3309.311, and 3309.33 of the Revised Code. *In addition*, "total service" includes any period, not in excess of three years, during which a member was out of service and receiving benefits from the state insurance fund, provided the injury or incapacitation was the direct result of school employment.

(Emphasis added.)

{¶ 36} In the present case, relator did receive her workers' compensation time as credit towards her "total service" for purposes of determining her pension benefits. However, R.C. 3309.01(D), in its definition of total service, clearly establishes that not all total service is contributing service. In fact, the statute expressly contemplates that workers' compensation time ("any period, not in excess of three years, during which a member was out of service and receiving benefits from the state insurance fund") is *excluded* from contributing service because it is calculated as an addition thereto when determining total service. Where the language of a statute is plain and unambiguous and convenes a clear and definite meaning, there is no occasion to resort to more complex rules

of statutory interpretation. "An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. R.C. 3309.01(D) is not ambiguous. The section defines total service, and while it could more comprehensively define contributing service, it does expressly exclude workers' compensation time from contributing service. That is the determinant distinction in the present case, and the statute is inescapably clear on that point.

{¶ 37} SERS therefore does not have a clear legal obligation to allow relator to file a disability benefit application made more than two years after her last date of contributing service, and relator does not have a clear legal right to file the application at that time.

{¶ 38} It is accordingly the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).